# EXHIBIT 36

## AGREEMENT

This agreement ("Agreement") is entered into by and between DOMINION ASSETS LLC ("Assignor"), a Delaware limited liability company having a principal place of business at 46090 Lake Center Plaza, Suite 208 Potomac Falls, Virginia 20165, and ACACIA PATENT ACQUISITION LLC ("APAC"), a Delaware limited liability company having a principal place of business at 6136 Frisco Square Blvd. Suite 385, Frisco, TX 75034 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

WHEREAS, Assignor is the sole and exclusive owner of the U.S. Patents listed in Exhibit A, and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof, including without limitation, all rights to claim priority on the basis thereof (collectively referred to as the "Patents"); and

WHEREAS, Assignor desires to sell to APAC all of Assignor's right, title and interest in and to the Patents and APAC, in turn, desires to acquire all right, title and interest in and to the Patents.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Assignor and APAC agree as follows:

1. **ASSIGNMENT**

   1.1.   Assignment. Effective immediately upon the date of Acceptable Completion as set forth in Section 1.3 below, Assignor assigns, conveys, transfers and sells to APAC, or APAC's designated Affiliate (as defined below) if APAC transfers or assigns its interest in this Agreement per Section 9.2 herein, the entire right, title, and interest in and to the Patents, including without limitation, all rights of Assignor to sue for past, present and future infringement of the Patents, including the right to collect and receive any damages, royalties, or settlements for such past, present and future infringements, all rights to seek and obtain injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries described in the Patents, and all goodwill in connection with the foregoing. Assignor shall execute and deliver to APAC (or APAC's designated Affiliate) a separate Assignment, which is attached hereto as Exhibit B, and such other documents as APAC (or APAC's designated Affiliate) shall reasonably require in order to comply with the terms set forth in this Agreement. The term "Affiliate" shall mean any entity that, directly or indirectly, is controlled by or under common control of APAC.

   1.2.   Investigation Period. Assignor acknowledges and agrees that APAC shall undertake and perform a due diligence investigation of the Patents during the period of up to five (5) days following the Effective Date (the "Investigation Period"). In consideration of APAC's due diligence investigation of the Patents, Assignor agrees that, during the Investigation Period, Assignor shall not discuss, negotiate or pursue with any third parties any offers or proposals with respect to or otherwise relating to any of the Patents. Assignor agrees to cooperate with APAC and to promptly provide to APAC all information in Assignor's possession or control regarding the Patents, including, but not limited to, a copy of the complete prosecution history of each of the Patents (each a "File

V.10-01-10                                     Page 1 of 16

CONFIDENTIAL                                                              DOM115723

History") and copies of all files, information and documents relating to the Patents. On or before the completion of the Investigation Period, APAC shall provide written notice to Assignor of its conclusion regarding the investigation of the Patents. The Investigation Period will commence on the Effective Date and conclude on the earlier of: (i) automatically at 11:59 P.M. Pacific Time, five (5) calendar days following, but not including the Effective Date; or (ii) such time within the Investigation Period as APAC transmits written notice to Assignor of its conclusion regarding the investigation of the Patents.

1.3.   Due Diligence Completion. If APAC determines, to its satisfaction and in its sole and absolute discretion, that the Patents are not encumbered (e.g., no liens, licenses etc.) and that the title of the Patents are held by the appropriate entity, then APAC shall deem the Patents as acceptable and transmit written notice to Assignor by the end of the Investigation Period that the Patents are acceptable ("Acceptable Completion"), and this Agreement shall continue with full force and effect following such Acceptable Completion of the Investigation Period. Otherwise, if APAC determines, in its sole and absolute discretion, that the Patents are not acceptable, then (i) APAC shall have no payment obligations or liability to Assignor hereunder; and (ii) this Agreement shall automatically terminate upon completion of the Investigation Period. For the purposes of this Section 1.3, written notice of Acceptable Completion (or mutual extension of the Investigation Period) may be sent by first class mail, facsimile, recorded delivery or electronic mail.

1.4.   Obligations of Assignor during the Investigation Period. Notwithstanding anything to the contrary in this Agreement, during the Investigation Period, Assignor will (i) pay all maintenance fees for the U.S. Patents on or before their United States Patent and Trademark Office (the "USPTO") Surcharge Dates at the appropriate small or large entity fee rate; (ii) pay all foreign maintenance fees with respect to the Patents on or before their due dates; (iii) continue the prosecution of any and all activities, matters and proceedings before the USPTO and foreign patent offices relating to the Patents, including without limitation any reissues or reexaminations of any issued United States patent and the prosecution and the continuing prosecution of any pending United States or foreign patent applications among the Patents; and (iv) not engage in any activity that may affect the accuracy or completeness of Assignor's representations and warranties in Section 4.1 below. Any costs, fees and expenses related to such maintenance, prosecution of the Patents and attorney fees incurred in the negotiation of this Agreement or consulting support provided by Assignor to APAC during the Investigation Period will be borne by Assignor.

2.   LICENSE BACK

2.1.   Grant Back License. Subject to Acceptable Completion and Assignor marking each of its products in a conspicuous manner so as to identify each of the applicable Patents embodied in such products (e.g., U.S. Patent No. 5379764), APAC shall grant to Assignor a limited, non-exclusive, non-transferable (except as provided for in Section 2.2 below), royalty-free, personal right and license under the Patents to make, use, offer to sell or sell Assignor's products or services (the "License"). Other than as detailed herein this Section 2.1 with respect to the License, no other rights or licenses under the Patents are granted.

2.2.   License Transferability. The License granted under the Patents may be transferred to a third party (a "Transfer") that is not an Exclusive Party (as defined below) and is either

CONFIDENTIAL

DOM115724

(i) the purchaser of all or substantially all of the operating assets of Assignor, or (ii) the successor of Assignor in connection with a merger involving the sale of all, or substantially all, of the outstanding capital stock of Assignor (each of (i) and (ii) a "Permitted Transferee"). The Permitted Transferee will assume all the rights and responsibilities of Assignor under the License. Assignor shall provide APAC with thirty (30) days prior written notice of such proposed Transfer. Except in the case of a Permitted Transferee as provided above, the License granted under the Patents is non-transferable and the Assignor acknowledges and agrees that Assignor shall not cause or permit an Exclusive Party to claim ownership or entitlement to any License or otherwise obtain or be deemed to obtain, directly or indirectly, any rights, benefits, licenses or immunities, in whole or in part, under any License, whether by, through, as a result of, or otherwise in connection with any agreement, contract, transaction or business combination with Assignor. APAC shall have the sole and exclusive right under the Patents to deal with one or more Exclusive Parties in any and all matters relating to the Patents, including without limitation any and all direct and indirect offers for sale and sales of products and services, in whole or in part, covered by the Patents to Exclusive Parties. The term "Exclusive Party" shall mean:

(a)   a declaratory judgment plaintiff or an infringement defendant under any of the Patents;

(b)   a party infringing any claim from any of the Patents; or

(c)   a party with which APAC has initiated or undertaken licensing communications, discussions and/or negotiations or otherwise asserted any of the Patents against.

As used in (a) through (c) above, the term "Exclusive Party" shall be deemed to include any and all of an Exclusive Party's affiliates.

## 3. CONSIDERATION

3.1.   Royalty Payments. Also in consideration of the rights assigned to APAC hereunder, Assignor's share of the Net Proceeds (as defined below) shall be equal to fifty percent (50%) of Net Proceeds. APAC's share of the Net Proceeds shall be equal to fifty percent (50%) of Net Proceeds. APAC shall allocate and remit Assignor's share of the Net Proceeds as follows:

(i)   seventy percent (70%) of Assignor's share of the Net Proceeds shall be due Assignor (i.e., thirty-five percent (35%) of the Net Proceeds); and

(ii)   thirty percent (30%) of Assignor's share of the Net Proceeds shall be due to ILeverage Inc (i.e., fifteen percent (15%) of the Net Proceeds).

For purposes hereof, the following terms shall have the following meanings:

"Net Proceeds" shall mean Total Recoveries less the APAC Costs.

"Total Recoveries" shall mean all amounts actually received by APAC after Acceptable Completion from the licensing, enforcement or sale of the Patents including all licensing proceeds and recoveries from any lawsuits or settlements.

CONFIDENTIAL

DOM115725

"APAC Costs" shall mean all costs and expenses incurred with third parties in connection with prosecuting, licensing, enforcing or defending the Patents, including without limitation:

(a) attorneys' and paralegal fees (whether on an hourly or contingent basis and whether for general or local counsel), costs and disbursements;

(b) the fees and costs of consultants, experts or technical advisors;

(c) travel and lodging expenses;

(d) duplicating, secretarial, stenographer, postage, courier and similar expenses;

(e) filing fees and other Patent Office fees or costs;

(f) court costs;

(g) legal and other costs related to any re-examination or reissue proceeding;

(h) legal and other costs incurred in defending any action or counterclaim with respect to any litigation related to the Patents or litigation resulting therefrom;

(i) legal and other costs in prosecuting or processing any U.S. or foreign application, including without limitation, any continuing application or continuation in part application; and

(j) any foreign tax now or hereafter imposed by any non-U.S. governmental or taxing authority on any aspect of this Agreement and the obligations hereunder.

3.2.  Application of Total Recoveries. Total Recoveries shall be applied in the following order of priority: first to APAC in an amount equal to the APAC Costs, then to APAC and Assignor in proportion to their respective shares of the Net Proceeds. All Taxes (as defined below) shall be the financial responsibility of the Party obligated to pay such Taxes as determined by the applicable law and neither Party is or shall be liable at any time for any of the other Party's Taxes incurred in connection with or related to amounts paid under this Agreement. The term "Taxes" shall mean any federal, state, local, municipal or other governmental taxes, duties, levies, fees, excises or tariffs, arising as a result of or in connection with any amounts paid under this Agreement, including without limitation:

(a) any state or local sales or use taxes;

(b) any import, value added or consumption tax;

(c) any business transfer tax;

(d) any taxes imposed or based on or with respect to or measured by any net or gross income or receipts of either Party; or

CONFIDENTIAL

DOM115726

(e)   any franchise taxes, taxes on doing business, gross receipts taxes or capital stock taxes.

If Taxes are required to be withheld on any amounts otherwise to be paid by one Party to the other, the paying Party shall deduct and set off such Taxes from the amount otherwise due and owed to the receiving Party and pay them to the appropriate taxing authority.

3.3.   Reporting Payments. All amounts payable to Assignor with respect to Net Proceeds, if any, shall be due within thirty (30) calendar days after the end of each calendar quarter. Within thirty (30) calendar days after the end of each quarter that Total Recoveries are received, APAC will provide Assignor with a report of Total Recoveries, APAC Costs and Net Proceeds, if any, for such calendar quarter. Assignor shall have the right to audit such reports in accordance with Section 5.2 below. All other payments from one Party to the other hereunder shall be due and payable within thirty (30) days following receipt of the applicable invoice.

3.4.   Assignor Availability. Assignor will be available when necessary to assist and consult with APAC or its attorneys on matters relating to the Patents. If any pending applications of the Patents exist, at the request and cost of APAC, the Assignor shall execute all documents including, but not limited to, powers of attorney and perform all acts as may be necessary to enable APAC to control prosecution of such applications. In the event that the testimony of any employee, director, officer, consultant or agent of Assignor is taken in any action relating to the Patents, APAC's attorneys will represent such party without additional charge, and Assignor and such party will cooperate with APAC and its attorneys in preparing for such testimony. APAC will pay for Assignor's reasonable out of pocket travel expenses incurred at the request of APAC and any such expenses will be treated as an APAC Cost.

3.5.   Maintenance and Prosecution. For so long as this Agreement is in effect, APAC shall have the right, at it's sole and absolute discretion, in continuing the prosecution of any patent applications, maintaining the Patents and abandoning any Patents or applications.

4.   REPRESENTATIONS AND WARRANTIES

4.1.   Assignor Representations and Warranties. Assignor represents and warrants to APAC that, as of the Effective Date hereof:

4.1.1.   Assignor is the sole owner of the Patents and has all right, title, claims, interest and privileges arising from such ownership, free and clear of any liens, security interests, encumbrances, rights or restrictions;

4.1.2.   the identity of all inventors of the inventions described in the Patents has been fully disclosed to the U.S. Patent Office as required by U.S. law;

4.1.3.   the Patents (i) are not the product or subject of any joint development activity or agreement with any third party; (ii) are not the subject of any consortia agreement; and (iii) have not been financed in whole or in part by any third party;

4.1.4.   the Patents remain in full force and effect as of the Effective Date of this Agreement;

V.10-01-10

CONFIDENTIAL

DOM115727

4.1.5.  there has been no assignment, license, cross-license, transfer, or conveyance of any rights, title, claims, interest or privileges with respect to the Patents to any third party; and the Patents are not subject to a covenant not to sue;

4.1.6.  Exhibit A includes the Patents, and if any related patents, patent applications, foreign patents, foreign applications, continuations, continuations-in-part, divisionals, extensions, renewals, reissues, re-examinations, or any issued patents which are subject to a Terminal Disclaimer under 37 C.F.R. §1.321 are omitted, the Parties agree that they shall be automatically included in such exhibit;

4.1.7.  all maintenance fees that have become due have been paid in full (i) for U.S. Patents at the appropriate small or large entity fee rate; and (ii) for foreign Patents;

4.1.8.  all prosecution fees related to the Patents that have become due have been paid in full;

4.1.9.  the Patents are not and have not been subject to any action or proceeding concerning their validity, enforceability, inventorship or ownership;

4.1.10.  Assignor has no knowledge of any facts that could give rise to a claim that the Patents are invalid or unenforceable; and Assignor has not engaged in any conduct, or omitted to perform any necessary act, the result of which would invalidate the Patents or preclude their enforceability;

4.1.11.  Assignor has all requisite legal and corporate power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

4.1.12.  the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which Assignor is a party.

4.2.  APAC Representations and Warranties.  APAC represents and warrants to Assignor that, as of the Effective Date hereof:

4.2.1.  APAC is a company duly organized and in good standing under the laws of Delaware;

4.2.2.  APAC has authority to enter into this Agreement and implement its terms; and

4.2.3.  the person executing this Agreement on behalf of APAC is duly authorized to do so.

4.3.  Third Party Agreements.  Assignor acknowledges that because of one or more preexisting agreements with third parties, including their Related Entities (each third party and its Related Entities a "Third Party Licensee"), upon or after Acceptable Completion, each such Third Party Licensee will obtain or will be granted, a license, release and/or covenant not to sue under the Patents. Such licenses, releases and/or covenants not to sue

V.10-01-10                              Page 6 of 16

CONFIDENTIAL                                                    DOM115728

may extend to non-Related Entities of each such Third Party Licensee whose own products or services are combined (i.e., a combination product) with a Third Party Licensee product. Assignor further acknowledges that no separate financial consideration shall be due or payable to Assignor in connection with any such agreement with a Third Party Licensee. For the purposes of this Section 4.3, the term "Related Entities" shall mean any entity, including parent companies and majority owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by each such Third Party Licensee, is under common control with each such Third Party Licensee, or an entity that controls each such Third Party Licensee, as well as all predecessors or successors of such entities.

5. **RECORDS AND FEES**

5.1. <u>Records</u>. APAC shall keep complete and proper records of the Total Recoveries, APAC Costs, and Net Proceeds.

5.2. <u>Audit</u>. Assignor shall have the right, during reasonable business hours, but no more than once per calendar year, to audit, at Assignor's expense, the correctness of any previously unaudited report by an independent public accountant chosen by Assignor who may examine APAC's records pertinent to this Agreement. Assignor and its representatives shall hold in confidence any such information and shall not use the information for any purposes other than verifying APAC's reporting in connection with this Agreement.

6. **ENFORCEMENT OF PATENT RIGHTS, COOPERATION AND BUYBACK OPTION**

6.1. Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense and will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. APAC however may, in its sole judgment, decide to institute enforcement actions against any or all of the companies that APAC believes are infringing the Patents. In such instances, APAC reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition of such action. The Parties agree to fully cooperate with each other in any litigation that is brought and any other matters in connection with prosecuting, licensing, enforcing or defending the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its reasonable and sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal. If APAC elects not to pursue licensing or enforcement of any of the Patents, then APAC shall transmit written notice to Assignor of its decision to no longer pursue licensing or enforcement actions and shall have thirty (30) days from transmitting such notice to assign all APAC rights in and to the Patents back to Assignor (such date of assignment, the "APAC Assignment Date"), subject to Section 4.3 above and any other encumbrances granted to third parties after the Effective Date. This Agreement shall terminate upon the APAC Assignment Date.

6.2. <u>Buyback Option</u>. Assignor shall have the option to purchase the Patents back from APAC, for a one-time payment of One (USD $1.00) U.S. Dollar (the "Buyback Payment"), within a ninety (90) day period, beginning two (2) years from the date of Acceptable Completion (such ninety (90) day period is the "Option Period") unless APAC has either (a) filed any action or counterclaim for infringement of any of the Patents, or (b) generated any Total Recoveries from licensing or enforcement of the

CONFIDENTIAL                                                    DOM115729

Patents (the failure of (a) and (b) above shall be referred to as a "Option Event"). In order to exercise the option pursuant to this Section 6.2 within the Option Period, Assignor shall provide APAC with written notice of its intention to exercise its right to purchase the Patents under this Section 6.2. APAC shall have a ninety (90) day period from the time it receives such notice in which it may cure the Option Event giving rise to the right to purchase back the Patents (the "Cure Period") by either (a) filing an action (or counterclaim) to enforce any of the Patents; or (b) generating any Total Recoveries and paying Assignor its share of the Net Proceeds, if any, as set forth in Section 3.1. If Assignor does not give APAC notice of its intention to purchase the Patents within the Option Period, its option under this Section 6.2 shall lapse. In the event that Assignor exercises the option under this Section 6.2 and APAC does not cure the option exercised ("Buyback"), APAC shall provide Assignor a fully executed assignment of the Patents promptly within thirty (30) days following APAC's receipt of the Buyback Payment and this Agreement shall automatically terminate.

## 7. GOVERNING LAW AND CONSENT TO JURISDICTION

7.1.    Choice of Laws. This Agreement shall be governed by and construed under applicable federal law and the laws of the State of Texas, excluding any conflict of law provisions. APAC and Assignor each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas, over any suit, action or proceeding arising out of or relating to this Agreement. APAC and Assignor hereby waive personal service of any summons, complaint, or other process in any action in any Texas state or federal court sitting in the Eastern District of Texas, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the Texas Long Arm Statute.

7.2.    Consequential Liability. Neither APAC nor Assignor shall be liable for any consequence or damage arising out of or resulting from the manufacture, use or sale of products under the Patents. In no event shall either Party be entitled to special, indirect, consequential damages, including lost profits, or punitive damages for breach of this Agreement.

## 8. CONFIDENTIALITY

8.1.    Except for the existence of this Agreement, all information provided pursuant to this Agreement, including without limitation, the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Assignor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Either Party may disclose Confidential Information to its financial advisors, partners, consultants and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Confidential Information shall not include information that:

(a)    was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b)    has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers,

CONFIDENTIAL                                                    DOM115730

employees, consultants or agents of the receiving Party; or

(c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

8.2.   Preservation of Privilege. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section 8.2 shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.

9.   MISCELLANEOUS

9.1.   Notice. Except as allowed in Section 1.5 herein with respect to written notification of Acceptable Completion, all notices or communications which either Party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered mail, certified mail, or recognized overnight courier to the address set forth below or to such other address as a Party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

To APAC:
ACACIA PATENT ACQUISITION LLC
6136 Frisco Square Blvd.
Suite 385
Frisco, TX 75034
Phone: (972) 668-9620
Fax: (972) 668-9621

To Assignor:
DOMINION ASSETS LLC
46090 Lake Center Plaza
Suite 208
Potomac Falls, Virginia 20165
Phone: _____

If no confirmation of receipt is available or such notice is refused, the Parties agree that

V.10-01-10

CONFIDENTIAL

DOM115731

for the purposes herein, notice shall be deemed to have been duly given or made three (3) business days after forwarding such notice to the other Party.

9.2.   **Assignment Successors.** Assignor may transfer or assign its interest in this Agreement (as distinguished from the transferability of the License as set forth in Section 2.2 above) provided that the transferee or assignee (i) is not an Exclusive Party as defined in Section 2.2 above; and (ii) agrees to be bound by the terms and conditions of this Agreement in writing. APAC may transfer or assign its interest in this Agreement to an Affiliate of APAC provided that such Affiliate agrees to be bound by all the terms and conditions of this Agreement in writing, including the obligation to make payments hereunder, and such Affiliate may subsequently transfer its interest in this Agreement to another Affiliate provided that such Affiliate also agrees to be bound by all the terms and conditions of this Agreement in writing, including the obligation to make payments hereunder. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Assignor and APAC. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

9.3.   **No Waiver.** The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

9.4.   **Provision Invalidity.** If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

9.5.   **Counterparts.** This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed or e-mailed copy of a signature page shall be considered an original for purposes of this Agreement.

9.6.   **Headings.** The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

9.7.   **Survival.** Upon termination of this Agreement, the rights granted to APAC shall automatically terminate and such rights shall revert to Assignor. Sections 3.3 (Reporting Payments), 4 (Representations and Warranties), 5.1 (Records), 5.2 (Audit), 7.1 (Choice of Laws), 7.2 (Consequential Liability), 8 (Confidentiality), and 9 (Miscellaneous) shall survive the termination of this Agreement.

9.8.   **Prevailing Terms.** If any conflict exists between the terms of this Agreement and the Assignment in Exhibit B, the terms of this Agreement shall control.

9.9.   **Broker Fees.** Assignor acknowledges that it retained the services of ILeverage Inc. ("ILeverage") to assist Assignor with the transfer of the Patents contemplated between Assignor and APAC under this Agreement. Assignor hereby authorizes the payment to ILeverage pursuant to Section 3 above and represents and warrants that such payment is



CONFIDENTIAL                                                                 DOM115732

given as full and final satisfaction of all payments and consideration earned by ILeverage in connection with the transfer of the Patents. Assignor further represents and warrants that no other third party has been solicited by Assignor to sell or otherwise convey any rights or interests in and to the Patents. Assignor shall indemnify and defend APAC against any and all claims, losses and damages resulting from or payable to ILeverage for (i) brokerage or related fees pertaining to the Patents, and (ii) any claims, losses and damages of any kind whatsoever from or payable to ILeverage pertaining to this Agreement.

9.10.   Entire Agreement. This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth below.

DOMINION ASSETS LLC                      ACACIA PATENT ACQUISITION LLC

By: _____            By: _____

Print Name: _Keith R. Keeling_           Print Name: Dooyong Lee

Title: _Managing Director_               Title: Executive Vice President

Date: _12/10/2010_                       Date: _12/10/10_

Accepted and Agreed: ILeverage accepts and agrees to the payment terms of Section 3.1 above. ILeverage further agrees and acknowledges that it is not a party to this Agreement, nor a third party beneficiary under this Agreement, and waives any and all rights of enforcement under this Agreement. ILeverage hereby indemnifies APAC against any and all losses incurred as a result of any breach by ILeverage of the agreements and representations above.

ILEVERAGE INC.
2860 Laguna
Suite 200
San Francisco, CA 94123

By: _____

Print Name: _Uzi Hlonch_

Title: _CEO_

Date: _Dec. 10, 2010_

V.10-01-16                               Page 11 of 16

46

CONFIDENTIAL                              DOM115733

EXHIBIT A

U.S. PATENTS & APPLICATIONS

| US Patent No. | US Appl. No. | Filing Date | Issue Date | Title |
|---|---|---|---|---|
| 5379764 | 07/987766 | 12-9-1992 | 1-10-1995 | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION IN BODY OF MAMMALS |
| | *08/271269 | 7-6-1994 | n a | |
| 5360004 | 08/059164 | 5-7-1993 | 11-1-1994 | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION USING NON-CONTINUOUS RADIATION |
| | *08/060706 | 5-13-1993 | n a | |
| 5460177 | 08/059162 | 5-7-1993 | 10-24-1995 | METHOD FOR NON-INVASIVE MEASUREMENT OF CONCENTRATION OF ANALYTES IN BLOOD USING CONTINUOUS SPECTRUM RADIATION |

*Expired or Abandoned

FOREIGN PATENTS & APPLICATIONS

| Foreign Patent or Publication No. | Publication Date | Filing Date | Country | Title |
|---|---|---|---|---|
| WO9613204A1 | 1996-05-09 | 1994-10-28 | WIPO | DETERMINATION OF ANALYTE CONCENTRATION USING NON-CONTINUOUS RADIATION |
| WO9613202A1 | 1996-05-09 | 1994-10-28 | WIPO | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION IN BODY OF MAMMALS |
| JP07132120A2 | 1995-05-23 | 1994-05-09 | Japan | NONINVASIVE MEASURING METHOD AND DEVICE OF SPECIMEN CONCENTRATION USING DISCONTINUOUS |
| EP0623307A1 | 1994-11-09 | 1994-05-06 | Europe | Non-invasive determination of constituent concentration using non-continuous radiation |
| CA2125152AA | 1994-11-08 | 1994-05-09 | Canada | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION USING NON-CONTINUOUS RADIATION |
| AU8094894A1 | 1996-05-23 | 1994-10-28 | Australia | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION IN BODY OF MAMMALS |
| AU6186494A1 | 1994-11-10 | 1994-05-04 | Australia | NON-INVASIVE DETERMINATION OF ANALYTE CONCENTRATION USING NON-CONTINUOUS RADIATION |

CONFIDENTIAL                                                    DOM115734

| Foreign Patent or Publication No. | Publication Date | Filing Date | Country | Title |
|---|---|---|---|---|
| WO9613201A1 | 1996-05-09 | 1994-10-28 | WIPO | NON-INVASIVE MEASUREMENT OF ANALYTE CONCENTRATION IN BLOOD |
| JP07136152A2 | 1995-05-30 | 1994-05-09 | Japan | METHOD AND DEVICE TO UNINVASIVELY MEASURE CONCENTRATION OF BLOOD COMPONENT OF ANIMAL |
| EP0623306A1 | 1994-11-09 | 1994-05-06 | Europe | Method for non-invasive measurement of concentration of analytes in blood using continuous spectrum radiation |
| CA2123153AA | 1994-11-08 | 1994-05-09 | Canada | METHOD FOR NON-INVASIVE MEASUREMENT OF CONCENTRATION OF ANALYTES IN BLOOD USING CONTINUOUS SPECTRUM RADIATION |
| AU6186394A1 | 1994-11-10 | 1994-05-04 | Australia | METHOD FOR NON-INVASIVE MEASUREMENT OF CONCENTRATION OF ANALYTES IN BLOOD USING CONTINUOUS SPECTRUM RADIATION |

V.16-01-10

CONFIDENTIAL

DOM115735

**EXHIBIT B**

Assignment

CONFIDENTIAL                                          DOM115736

## ASSIGNMENT

WHEREAS, DOMINION ASSETS LLC, a Delaware limited liability company, having a place of business at 46090 Lake Center Plaza, Suite 208 Potomac Falls, Virginia 20165 (hereafter, together with any successors, legal representatives or assigns thereof, called "Assignor") is the owner of the entire right, title, and interest and assignee of the U.S. Patents listed in the Exhibit attached hereto;

AND WHEREAS, _____, a _____ limited liability company having a place of business at _____ thereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNEE") wants to acquire the entire right, title and interest in and to the said U.S. Patents listed in the Exhibit attached hereto, and all the inventions therein, and Assignor is willing to enter into such assignment.

NOW, THEREFORE, effective on _____, 2010 and in consideration of the sum of One Dollar ($1.00) in hand paid and other good and valuable consideration the receipt of which from ASSIGNEE is hereby acknowledged, Assignor has sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over to ASSIGNEE the entire right, title and interest in and to the U.S. Patents listed in the Exhibit attached hereto and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations in-part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof, including without limitation, all rights to claim priority on the basis thereof, all rights to sue for past, present and future infringement, including the right to collect and receive any damages, royalties, or settlements for such infringements, all rights to sue for injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries thereof;

Assignor hereby covenants that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict with this Assignment;

Assignor hereby further covenants and agrees that it will communicate to ASSIGNEE any and all facts known to it respecting said patents, and testify in any legal proceeding, sign all lawful papers, execute and deliver all papers and take any actions that may be necessary or desirable to perfect the title to any aforementioned patents and inventions, execute all divisional, continuation, reexamination, reissue and substitute applications, and make all rightful oaths and generally do everything possible to aid ASSIGNEE to obtain and enforce proper patent protection for said inventions in all countries.

FOR USPTO RECORDING

CONFIDENTIAL

DOM115737

IN TESTIMONY WHEREOF, I hereunto set my hand this _____ day of _____ 20_____.

DOMINION ASSETS LLC
(Assignor)

By _____

Name _____

Title _____

STATE OF
COUNTY OF

On _____, before me _____, Notary Public, personally appeared _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

*I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal*

_____
Signature of Notary

CONFIDENTIAL

DOM115738